## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

MANUEL O. VALENTÍN-INCLE,

      Plaintiff,

           v.                        CIVIL NO.: 15-2137 (MEL)

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## OPINION AND ORDER

Pending before the court is Manuel O. Valentín-Incle's ("Plaintiff") appeal from the decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability benefits. Plaintiff—who applied for disability alleging schizoaffective disorder, bipolar disorder (depressive with psychotic features), and depression—contends that the administrative law judge erred in discounting the opinion of Dr. Ricardo Fumero, the treating physician, and in impermissibly relying on "raw" medical evidence in making her residual functional capacity finding.

## I.    PROCEDURAL AND FACTUAL BACKGROUND

On April 27, 2012, Plaintiff filed an application for Social Security benefits alleging that on January 1, 2005 ("the onset date"), he became unable to work due to disability. Tr. 317.[1] Plaintiff met the insured status requirements of the Social Security Act through December 31, 2008. Tr. 15. Prior to becoming unable to work, Plaintiff was a cleaner at a restaurant, a store clerk, and a car salesman. Tr. 43–44. The claim was denied on September 7, 2012, and upon reconsideration on March 14, 2013. Tr. 199; 208. Thereafter, Plaintiff requested a hearing, which

---

[1] "Tr." refers to the transcript of the record of proceedings.

was held on October 9, 2013 before Administrative Law Judge Emily Ruth Statum (hereafter "the ALJ"). Tr. 30. On February 21, 2014, the ALJ issued a written decision finding that Plaintiff "was not disabled under sections 216(i) and 223(d) of the Social Security Act through December 31, 2008, the date last insured." Tr. 22. Thereafter, Plaintiff requested review of the ALJ's decision. Tr. 6. Plaintiff's request for review was denied by the Appeals Council, rendering the ALJ's decision the final decision of the Commissioner of Social Security, subject to judicial review. Tr. 1. Plaintiff filed a complaint on August 19, 2015. ECF No. 1. Both parties have filed supporting memoranda. ECF Nos. 17; 22.

II.   LEGAL STANDARD

   A. Standard of Review

   Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether her factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

   Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Richardson v. Perales, 402 U.S. 389, 401 (1971).  The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence."  Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts."  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)).  Moreover, a determination of substantiality must be made based on the record as a whole.  See Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).  However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence."  Id.  Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."  Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

### B. Disability under the Social Security Act

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that he or she is disabled within the meaning of the Social Security Act.  See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987)  An individual is deemed to be disabled under the Social Security Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140–42. If it is determined that the plaintiff is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether the plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether the plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If he does, then the ALJ determines at step three whether the plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then the plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether the plaintiff's impairment or impairments prevent him from doing the type of work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv). In assessing an individual's impairments, the ALJ considers all of the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functional capacity ("RFC"). Id. If the ALJ concludes that the plaintiff's impairment or impairments do prevent him from performing his past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether the plaintiff's RFC, combined with his age, education, and work experience, allows him to perform

4

any other work that is available in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  If the ALJ determines that there is work in the national economy that the plaintiff can perform, then disability benefits are denied.  20 C.F.R. § 404.1520(g).

## III.   THE ALJ'S DETERMINATION

In the case at hand, the ALJ found in step one of the sequential process that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, January 1, 2005.  Tr. 15. At step two, the ALJ determined that "[t]hrough the date last insured, [Plaintiff] had the following severe impairments: a bipolar disorder depressive type with psychotic features."  Id. (citations omitted).  At step three, the ALJ found that "[t]hrough the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Id.  Next, the ALJ determined that "through the date last insured, the claimant had the residual functional capacity for work at all exertional levels which is unskilled[,] simple, routine and repetitive with occasional contact with coworkers, supervisors and the public."  Tr. 18.  At step four, the ALJ determined that through the date last insured, Plaintiff could not perform any past relevant work.  Tr. 20.  At step five, the ALJ presented Plaintiff's RFC limitations, as well as his age, education, and work experience to a vocational expert.  The vocational expert testified, taking all of these factors into account, that an individual would be able to perform the requirements of the following representative occupations: assembler, auto detailer, and finisher.  Tr. 21.  Because there is work in the national economy that Plaintiff can perform, the ALJ concluded that he is not disabled.  Id.

## IV.   ANALYSIS

Plaintiff challenges the ALJ's decision with regard to steps four and five of the sequential process.  First, Plaintiff argues that the ALJ erroneously discounted the opinion of the treating

physician, Dr. Fumero, when determining Plaintiff's RFC.  As a result, the ALJ posed hypothetical questions to the vocational expert that did not accurately reflect all of Plaintiff's limitations. Second, Plaintiff argues that the ALJ improperly interpreted "raw" medical evidence in making her RFC finding.

### 1.   Plaintiff's claim that the ALJ erroneously discounted the opinion of the treating physician.

Plaintiff contends that the ALJ should have given more weight to the opinion of the treating physician, Dr. Fumero, when determining Plaintiff's RFC.  In her opinion, the ALJ stated that she

> granted little weight to the medical source statement that Dr. Fumero offered to the Social Security Administration on April 13, 2005.  Dr. Fumero indicated in his medical source statement to the Social Security Administration that the claimant had a chronic psychiatric condition and had had severe psychiatric hospitalizations due to schizoaffective disorder and that despite of treatment, claimant was withdrawn and psychotic with auditory hallucinations, persecutory delusions, depressed mood with a blunted affect, poor insight and judgment (Exhibit 20F/2).  These limitations are not reflected in his treatment notes from the alleged onset date to the date last insured.  At the time Dr. Fumero issued the medical source statement, the claimant had recovered from the hospitalization in 2000 as by March 4, 2003, Dr. Rentas reported that the claimant was logical, coherent, relevant and cooperative (Ex. 12F at 1).  In addition, despite the hospitalization in January 2005, his condition quickly improved with treatment and shortly after the hospitalization, it was found that the claimant was doing well.

Tr. 20.

The disability determination process generally gives "more weight to medical opinions from [a claimant's] treating sources."  20 C.F.R. § 404.1527(c)(2).  However, the ALJ is not *required* to give controlling weight to the opinions of treating physicians.  Barrientos v. Sec'y of Health & Human Servs., 820 F.2d 1, 2–3 (1st Cir. 1987); Rivera-Tufino v. Comm'r of Soc. Sec., 731 F. Supp. 2d 210, 216 (D.P.R. 2010).  Rather, the ALJ can give less weight to a treating physician's opinion if she has good reason to do so.  Pagán-Figueroa v. Comm'r of Soc. Sec., 623 F. Supp. 2d 206, 210–211 (D.P.R. 2009) (citing Carrasco v. Comm'r of Soc. Sec., 528 F. Supp. 2d 17, 25 (D.P.R. 2007)).  Specifically, the ALJ may disregard the treating physician's opinion when

6

it is "not supported by medically acceptable clinical laboratory techniques, or [is] otherwise unsupported by the evidence." Sánchez v. Comm'r of Soc. Sec., 270 F. Supp. 2d 218, 221–22 (D.P.R. 2003) (citing Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir.1994)). This remains true regardless of whether the source of the evidence is a non-treating doctor. Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 n.1 (1st Cir. 1988) (citing Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 130 (1st Cir. 1981)).

Plaintiff argues that "[n]othing . . . indicates that [Dr. Fumero's] observations are not supported." ECF No. 17, at 25. The record reflects otherwise.

On January 4, 2005, Plaintiff was admitted to the hospital. Tr. 138. He was diagnosed with bipolar disorder (depressive type with psychotic features) and received a Global Assessment of Functioning (GAF) of 30 the same day.[2] Tr. 142. On January 24, 2005, Plaintiff was discharged from the hospital with a diagnosis of schizoaffective disorder (bipolar type) and a GAF of 55.[3] Tr. 90. He was to be treated with Haldol, Benadryl, Depakote, and Dulmane. Id. On January 25, 2005, a psychiatrist stated that Plaintiff had accepted treatment, which reduced his severe symptoms such that treatment could be continued in a less restrictive environment. Tr. 139. On February 14, 2005, Dr. Fumero reported that Plaintiff was "good." Tr. 107. On July 6, 2005, Dr.

---

[2] The GAF "is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'" Langley v. Barnhart, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004). A GAF of 21 to 30 indicates that the individual's behavior is considerably influenced by delusions or hallucinations or the individual has a serious impairment in communication or judgment or an inability to function in almost all areas. Pate-Fires v. Astrue, 564 F.3d 935, 940 (8th Cir. 2009). It should be noted that since 2013, the GAF score is no longer used in the Diagnostic and Statistics Manual of Mental Disorders. Negrón v. Colvin, Civ. No. 13-1926 CVR, 2015 WL 1499144, at *4 n.4 (D.P.R. Apr. 1, 2015); Hall v. Colvin, 18 F. Supp. 3d 144, 153 (D.R.I. 2014) (citing Am. Psychiatric Ass'n, Diagnostic and Stat. Manual of Mental Disorders DSM–5 16 (5th ed. 2013)). On July 22, 2013, the Social Security Administration published Administrative Memorandum AM-13066 in order to guide adjudications on using GAF scores. Bourinot v. Colvin, 95 F. Supp. 3d 161, 178 (D. Mass. 2015). This memorandum "indicates that the SSA will continue to receive and consider GAF scores just as it would other opinion evidence, but scores must have supporting evidence to be given significant weight." Id. (citing Kroh v. Colvin, Civ. No. 3:13-CV-01533, 2014 WL 4384675, at *18 (M.D. Pa. Sept. 4, 2014)).

[3] A GAF score of 51–60 "indicates moderate symptoms (e.g., flat affect and circumlocutory speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Negrón v. Colvin, Civ. No. 13-1926 (CVR), 2015 WL 1499144, at *4 n.4 (D.P.R. Apr. 1, 2015).

Fumero described Plaintiff's condition as "good." Tr. 103. On September 28, 2005, Dr. Fumero also used the term "good" to describe Plaintiff. Tr. 102. On March 29, 2006, Dr. Fumero again found that Plaintiff was "good." Tr. 100. Finally, on May 3, 2006, Dr. Fumero found that Plaintiff was "good" and "calm."[4] Tr. 99.

Plaintiff argues that the ALJ placed too much emphasis on Dr. Fumero's assessments that Plaintiff was "good" because Dr. Fumero was quoting Plaintiff's response as to how he felt. ECF No. 17, at 23–24. Plaintiff's only evidence that Dr. Fumero was quoting him is the appearance of the term "good" in quotation marks. There is not enough evidence to support an inference that Dr. Fumero was quoting Plaintiff; the mere fact that the term "good" appears in quotations marks does not suffice.[5]

In sum, an examination of the record supports the ALJ's conclusion that "there is little evidence confirming the symptoms and limitations reported by Dr. Fumero during the period at issue." Tr. 20. It follows that the ALJ was entitled to disregard Dr. Fumero's opinion and was not obliged to incorporate it into the hypothetical question she posed to the vocational expert. See Vélez-Pantoja v. Astrue, 786 F. Supp. 2d 464, 469 (D.P.R. 2010) ("It is well within the ALJ's authority to weigh the evidence, to determine the credibility of the plaintiff's subjective

---

[4] Defendant claims that evidence from 2000 to 2003 also supports the ALJ's decision to discount Dr. Fumero's opinion because it demonstrates an established pattern of Plaintiff stabilizing when on appropriate medication. ECF No. 22, at 12. The record is not as clear as Defendant portrays it to be. The exhibit Defendant cites to merely reflects that a psychiatrist visited Plaintiff's home on May 18, 2002 due to an unidentified condition and that Plaintiff felt better on October 8, 2002 and November 5, 2002 and was stable on March 4, 2003. Tr. 132–136.

[5] Plaintiff further contends that the medications prescribed in 2005 and 2006 after his hospitalization were the same as those prescribed when he was hospitalized and that it subsequently can be inferred that his condition remained just as severe. ECF No. 17, at 24. Plaintiff cites to the untranslated version of Exhibit 2F to support this contention. Tr. 373–91. However, Exhibit 2F do not contain information about the medications prescribed after Plaintiff's hospitalization in English (as translated). Tr. 96–114. Thus, Plaintiff's argument is not supported by the record. See Puerto Ricans For Puerto Rico Party v. Dalmau, 544 F.3d 58, 67 (1st Cir. 2008) ("Where a party makes a motion to dismiss based on a decision that was written in a foreign language, the party must provide the district court with and put into the record an English translation of the decision.").

complaints, and to use only credible evidence in posing a hypothetical question to a vocational expert.").

### 2. Plaintiff's claim that the ALJ impermissibly relied on "raw" medical evidence in making her RFC finding.

As a lay person, an ALJ is not qualified to interpret raw data in a medical record in functional terms.  Pérez v. Sec'y of Health & Human Servs., 958 F.2d 445, 446 (1st Cir. 1991). Unless the medical evidence before the ALJ suggests a relatively mild physical impairment posing no significant exertional restrictions to the layperson's eye, the ALJ must measure the claimant's capabilities, a process to which an expert's RFC evaluation is essential.  Manso-Pizarro, 76 F.3d at 17–18.  Accordingly, the First Circuit has repeatedly held that where the record is bereft of any medical assessment of RFC, and an ALJ reaches conclusions about a claimant's physical exertional capacity nonetheless, her conclusions are not supported by substantial evidence and remand is necessary.  Pérez, 958 F.2d at 446.  See also Rosado v. Sec'y of Health & Human Servs., 807 F.2d 292, 293–94 (1st Cir. 1986) ("By disregarding the only [RFC] evaluation in the record, the ALJ in effect has substituted his own judgment for uncontroverted medical opinion.  This he may not do.");  Berrios v. Sec'y of Health & Human Servs., 796 F.2d 574, 576 (1st Cir. 1986) ("[T]he Secretary must have relied heavily if not exclusively on the rheumatologist's report and the two normal myelograms.  We cannot decipher the medical jargon in this report and we do not understand the significance of the various clinical tests.  We do not think the Appeals Council, composed of lay persons, was competent to interpret and apply this raw, technical medical data.");  Lugo v. Sec'y of Health & Human Servs., 794 F.2d 14, 15 (1st Cir. 1986) ("None of the physicians who examined claimant provided any medical findings concerning the impact of his heart condition on his [RFC]. . . .  Neither the Appeals Council nor this court is qualified to make this medical judgment about [RFC] based solely on bare medical findings as to claimant's heart

condition."); <u>Rivera-Figueroa v. Sec'y of Health & Human Servs.</u>, 858 F.2d 48, 52 (1st Cir. 1988)

("[T]he ALJ appears to have interpreted the medical data himself to conclude that[ ] . . . claimant

. . . had the physical capacity to perform a full range of medium work. . . . [W]e question the ALJ's

ability to assess claimant's physical capacity unaided even by an RFC assessment from a

nonexamining doctor."); <u>Rivera-Torres v. Sec'y of Health & Human Servs.</u>, 837 F.2d 4, 6–7 (1st

Cir. 1988) ("Where, as here, there is no [RFC] evaluation . . . we think the ALJ, a lay factfinder,

lacks sufficient expertise to conclude claimant has the ability to be on his feet all day, constantly

bending and lifting 25 pound weights."); <u>Manso-Pizarro</u>, 76 F.3d at 19 ("[G]iven the illegibility of

non-trivial parts of the medical reports, coupled with identifiable diagnoses and symptoms that

seem to indicate more than mild impairment, we believe that the record alerted the ALJ to the need

for expert guidance regarding the extent of the claimant's [RFC] to perform her particular past

employment.").

Plaintiff bases his contention that the ALJ improperly interpreted "raw" medical evidence

in making her RFC determination on the fact that no separate RFC assessments were made due to

the medical consultant's finding that Plaintiff was not disabled.  Tr. 208.  Thus, the evidence of

Plaintiff's symptoms and limitations that was before the ALJ was limited to testimony provided

by Plaintiff and his mother and Dr. Fumero's medical source statement.  The ALJ found that the

testimony of Plaintiff and his mother was not consistent with the medical evidence in the record.

As described above, the ALJ also granted little weight to the opinion of the treating physician, Dr.

Fumero, regarding Plaintiff's RFC.  Thus, the ALJ formulated Plaintiff's RFC on her own, without

the benefit of any medical guidance.  In so doing, she effectively "substituted h[er] own judgment

for uncontroverted medical opinion," a course of action which legal precedent has consistently

disapproved of.  <u>Manso-Pizarro</u>, 76 F.3d at 19.

Based on the foregoing analysis, the Commissioner's decision is **REVERSED IN PART** and **AFFIRMED IN PART**.  The decision of the Commissioner regarding Plaintiff's RFC was not based on substantial evidence.  Therefore, the Commissioner's decision is **VACATED IN PART** and the case **REMANDED** so that the Commissioner may receive and consider additional evidence regarding Plaintiff's RFC.  With respect to the weight given by the ALJ to the opinion of Dr. Fumero, Plaintiff's arguments are rejected and the Commissioner's decision is hereby **AFFIRMED**.  This remand does not dictate any outcome with regard to the final finding of disability.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 19th day of December, 2018.

s/Marcos E. López
U.S. Magistrate Judge